**Paul SMITH, Appellant,**

v.

**Charles E. LOWE, Jr., Judge, Pike Circuit Court, Appellee.**

No. 89–SC–546–MR.

Supreme Court of Kentucky.

June 28, 1990.

Choya G. Oliver, Oliver and Oliver, Robert W. Willmott, Jr., Downing, Mathews and Willmott, Lexington, for appellant.

Frederic J. Cowan, Atty. Gen., Ian G. Sonego, Asst. Atty. Gen., Frankfort, for appellee.

ELDRED E. ADAMS, Jr., Special Justice.

The facts essential to a disposition of this appeal are not in dispute. On May 29, 1985, two coal trucks engaged in transporting coal from a mine in Canada, Pike County, Kentucky, to a tipple at Belfry, Kentucky, were ambushed near the top of Coburn Mountain in Pike County, Kentucky. One of the drivers, Hayes West, died from a shotgun wound received in the incident.

On September 2, 1987, appellant, along with several other individuals, was indicted in the United States District Court for the Eastern District of Kentucky. The relevant portions of the indictment for purposes of this appeal are as follows:

### COUNT 1

[18 U.S.C. 371]

"THE GRAND JURY CHARGES:

That from on or about May 1, 1985, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including May 29, 1985, in Pike County, Kentucky, in the Eastern District of Kentucky, and elsewhere,

PAUL SMITH

ARNOLD RAY HEIGHTLAND

DONNIE THORNSBURY

DAVID RUSSELL THORNSBURY

JAMES DARRYL SMITH, AND

IRVIN SMITH

defendants and co-conspirators herein did unlawfully, willfully, and knowingly con-

spire, combine, confederate and agree together and with each other, and with other individuals both known and unknown to the Grand Jury, to commit offenses against the United States, to wit: to violate Title 18, United States Code, Sections 33 and 34, by willfully, with intent to endanger the safety of a person on board and with reckless disregard for the safety of human life, damaging and disabling motor vehicles which were being used, operated, and employed in interstate commerce, resulting in the death of Hayes West, and injuries to Roy Lee Johnson.

\*　　\*　　\*　　\*　　\*　　\*

## COUNT 2

[18 U.S.C. 33, 34 AND 2]
THE GRAND JURY
FURTHER CHARGES:

That on or about May 29, 1985, in Pike County, Kentucky in the Eastern District of Kentucky,

## PAUL SMITH

## ARNOLD RAY HEIGHTLAND

## DONNIE THORNSBURY

## DAVID RUSSELL THORNSBURY

## JAMES DARRYL SMITH, AND

## IRVIN SMITH

aided and abetted by one another, did willfully, with intent to endanger the safety of of a person on board and with reckless disregard for the safety of human life, damage and disable, and attempt to damage and disable a motor vehicle, to wit: a Mack 600 coal truck, which was being used, operated and employed in interstate commerce, and which conduct resulted in the death of the driver of the motor vehicle, Hayes West; in violation of Title 18, United States Code, Sections 33, 34, and 2."

In November of 1987 Arnold Heightland, Donnie Thornsbury, David Russell Thornsbury, and James Darryl Smith were tried in U.S. District Court and convicted. Irvin

Smith pleaded guilty and testified against the other defendants. Except for Irvin Smith, none of the other defendants implicated the appellant herein.

Paul Smith was then tried in the United States District Court for the Eastern District of Kentucky, Pikeville Division, sitting in London, Kentucky. At the conclusion of the trial the jury was instructed, *inter alia:*

## INSTRUCTION

Counts 2 and 3 charge a violation of 18 U.S.C. 33, 34 and 2. That law provides in part that whoever willfully, with intent to endanger the safety of any person on board, or with a reckless disregard for the safety of human life, damages or disables, or attempts to disable, any motor vehicle which is used, operated or employed in interstate commerce, is in violation of the laws of the United States.

The essential elements of this crime, as charged in Count 2 of the indictment, each of which must be proven beyond a reasonable doubt, are:

ONE: That at the time and place set forth in the indictment the accused did damage or disable, or attempt to damage or disable, a motor vehicle being driven by Hayes West;

TWO: That the accused acted willfully in damaging or disabling the motor vehicle, or acted willfully in attempting to damage, or disable the motor vehicle;

THREE: That the accused acted with the intent to endanger the safety of a person on board the motor vehicle or with reckless disregard for the safety of human life;

FOUR: That the motor vehicle was being used, operated or employed in interstate commerce; and

FIVE: That this conduct resulted in the death of Hayes West.

\*　　\*　　\*　　\*　　\*　　\*

## INSTRUCTION

The defendant is charged in Count 4 with a violation of Title 18, United States Code, Section 924(c), which prohibits any-

one to use or carry a firearm during and in relation to the commission of some other federal crime of violence.

The essential elements of this crime, each of which must be proven beyond a reasonable doubt, are:

ONE: That at the time and place set forth in the indictment the accused committed the offense charged in Count 2 or in Count 3;

TWO: That the accused knowingly used or carried one of the firearms described in the indictment while comitting such crime of violence.

The offenses charged in Counts 2 and 3 are crimes of violence. Therefore, if the accused knowingly used or carried a firearm to commit either the crime charged in Count 2 or the crime charged in Count 3, then he is in violation of this law.

At the conclusion of the trial the appellant herein was found not guilty of all charges against him. As soon as the verdict was announced the Kentucky State Police served a murder warrant on him. On February 3, 1988, the Pike County grand jury returned an indictment against the appellant the relevant part of which states as follows:

"THE GRAND JURY CHARGES:

On or about the 29th day of May, 1985, in Pike County, Kentucky, the above named defendant committed murder by shooting Hayes West with a shotgun thereby causing his death, against the peace and dignity of the Commonwealth of Kentucky."

The defendant-appellant moved to dismiss the indictment on the grounds that it violated the Double Jeopardy Clauses of the United States Constitution and the Kentucky Constitution and KRS 505.050. This motion was overruled by the trial court and an original action was then filed in the Court of Appeals for a writ of prohibition to permanently enjoin the trial court from placing the appellant on trial for murder. The Court of Appeals denied the petition together with the subsequent motion for reconsideration *en banc*. This appeal followed.

Central to a determination of this case is what effect KRS 505.050 has on the Commonwealth's prosecution for murder in light of the appellant's acquittal in federal court. KRS 505.050 provides as follows, to-wit:

"When conduct constitutes an offense within the concurrent jurisdiction of this state and of the United States or another state, a prosecution in such other jurisdiction is a bar to a subsequent prosecution in this state under the following circumstances:

(1) The former prosecution resulted in an acquittal, a conviction which has not subsequently been set aside, or a determination that there was insufficient evidence to warrant a conviction, and the subsequent prosecution is for an offense involving the same conduct unless:

(a) Each prosecution requires proof of a fact not required in the other prosecution; or

(b) The offense involved in the subsequent prosecution was not consummated when the former prosecution began; or

(2) The former prosecution was terminated in a final order or judgment which has not subsequently been set aside and which required a determination inconsistent with any fact necessary to a conviction in the subsequent prosecution."

Our inquiry is complicated by the manner in which this case has come before this Court. The death of a victim is not an element of the offense under 18 U.S.C. section 33; rather, death of a victim is a factor which will enhance the penalty under the statute. However, in the present case the federal indictment specifically charged that the acts complained of resulted in the "... death of Hayes West and injuries to Roy Lee Johnson." The fifth element of the instruction noted earlier specifically provided that one of the elements of the offense was, "(t)hat this conduct resulted in the death of Hayes West."

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the United States Supreme Court considered a case where the defendant was charged with rob-

bing one of six poker players and acquitted. The defendant was then tried for the robbery of another one of the players and was convicted and the evidence in both cases was essentially the same except the testimony identifying the defendant as one of the robbers was substantially stronger at the second trial. In reversing the conviction the Supreme Court held that the doctrine of collateral estoppel is embodied in the fifth amendment guarantee against double jeopardy and the State could not try the defendant a second time. The Court went on in the opinion to explain:

"[3] 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer*, 242 US 85, 61 L Ed 161, 37 S Ct 68, 3 ALR 516. As Mr. Justice Holmes, put the matter in that case, 'It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.' 242 US, at 87 [37 S.Ct. at 69], 61 L Ed at 164. As a rule of federal law, therefore, '[i]t is much too late to suggest that this principle is not fully applicable to a former judgment in a criminal case, either because of lack of 'mutuality' or because the judgment may reflect only a belief that the Government had not met the higher burden of proof exacted in such cases for the Government's evidence as a whole although not necessarily as to every link in the chain.' *United States v. Kramer*, 289 F2d 909, 913.

[4] The federal decisions have [397 U.S. at 444, 90 S.Ct. at 1194] made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States*, 332 US 575, 579, 92 L Ed 180, 184, 68 S Ct 237 [240]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475-476.

Considering KRS 505.050(2) the next inquiry becomes whether or not the federal court trial resulted in a "... determination inconsistent with any fact necessary to a conviction in the subsequent prosecution." The federal court jury was instructed on five (5) separate elements, all of which required proof beyond a reasonable doubt. Since the jury verdict was a general verdict, as opposed to a verdict based on special interrogatories with a separate factual finding as to each element, there is no way of determining from a purely technical standpoint why Mr. Smith was acquitted, e.g. he could have been acquitted because the government failed to satisfy the statutory requirement that the vehicle was being operated in interstate commerce at the time of the shooting. However, this argument is more theoretical than real. *Ashe v. Swenson, supra,* dictates a common sense analysis based on the totality of the circumstances in the previous prosecution. Using this approach, it is obvious that the federal jury acquitted Paul Smith because it simply did not believe Irvin Smith. The question of whether or not the appellant herein caused the death of Hayes West was squarely presented to the jury and the jury

resolved it in favor of the appellant. Clearly, the not guilty verdict in federal court "... required a determination inconsistent ..." with the murder charge in the case *sub judice.*

For the foregoing reasons the judgment of the Court of Appeals is reversed and remanded to the Court of Appeals with directions to grant the writ.

STEPHENS, C.J., and GANT, LAMBERT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., files a separate dissenting opinion in which VANCE, J., joins.

COMBS, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the prosecution of Smith for murder after his acquittal of federal offenses is not prohibited by either the Kentucky Constitution, the federal constitution or by K.R.S. 505.050.

Smith sought a writ of prohibition permanently preventing the Pike Circuit judge from trying him for allegedly murdering the truck driver. Smith claimed that double jeopardy prevented his trial in state court for murder because it arose out of the same course of conduct as the federal charge of endangering the safety of a person in a motor vehicle while attempting to disable the motor vehicle. Smith was acquitted of the federal charge. The Court of Appeals refused to grant prohibition and their decision was correct.

Both federal and state law, without violating any prohibition against double jeopardy, provide that a defendant may be separately prosecuted for several offenses arising out of a single course of conduct as long as the proof of the violation of each criminal statute requires the proof of an additional fact which the other does not. Cf. *Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Wager v. Commonwealth,* Ky., 751 S.W.2d 28 (1988); *Jordan v. Commonwealth,* Ky., 703 S.W.2d 870 (1985); *Wilson v. Commonwealth,* Ky., 695 S.W.2d 854 (1985); *Polk v. Commonwealth,* Ky., 679 S.W.2d 231 (1984); K.R.S. 505.020 and K.R.S. 505.050.

Smith was acquitted of having violated 18 U.S.C. § 33, destruction of motor vehicles or motor vehicle facilities. The alleged violation of the federal statute resulted in a death and 18 U.S.C. § 34 would have permitted the imposition of the death penalty or life imprisonment. K.R.S. 507.-020, the Kentucky murder statute, would require only proof of the defendant's intentional conduct resulting in the death of a person.

Clearly proof of death is not necessary to a conviction under the federal law. There need be only proof of an intent to endanger the safety of a person in the motor vehicle while attempting to or successfully, damaging or disabling the vehicle. K.R.S. 507.-020 requires no proof regarding an attempt to damage motor vehicles. Consequently, because each statute requires proof of a fact which the other does not, Smith's acquittal under the federal law does not exempt him from a subsequent murder prosecution under Kentucky law.

*Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) is not applicable because the second indictment differs from the first in material facts other than the identity of the victim. The fact that the federal indictment may have listed a criminal act such as the alleged murder, proof of which was not required to prove the federal charge, does not bring such criminal conduct within the prohibition against double jeopardy. *Polk, supra.*

Obviously murder and attempted destruction of a motor vehicle and the endangerment of a passenger are not the same offense and do not involve proof of the same criminal elements. Collateral estoppel of the facts in the federal prosecution does not bar a prosecution for murder under Kentucky law.

I would affirm the decision of the Court of Appeals denying prohibition and allow the Kentucky prosecution to proceed to a jury determination.

VANCE, J., joins in this dissent.